## IN THE UNITED STATES DISTRICT COURT FOR THE

## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| D.R.Q., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. CIV-25-244-ALM** |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

D.R.Q.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-34.  (Doc. 1).  The Commissioner filed the Administrative Record ("AR") (Doc. 5), and the parties have fully briefed the issues. (Docs. 6, 12, 15).[2]  The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 10, 11).  Based on the Court's review of the record and issue presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] For privacy purposes in light of the sensitive information disclosed in Social Security cases, the Court refers to Plaintiff by initials only.

[2] Citations to the parties' briefs refer to the Court's CM/ECF pagination.  Citations to the Administrative Record refer to its original pagination.

## I.    The Disability Standard and Standard of Review

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence" from an "acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 404.1521; *see id.* §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment

or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"),[3] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id*. "The claimant is entitled to disability benefits only if [he or she] is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determin[ing] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080,

---

[3] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

## II.     Procedural History

Plaintiff filed an application for DIB on September 15, 2022, alleging a disability onset date of April 17, 2018. (AR, at 96, 105, 276-78). The SSA denied the application initially and on reconsideration. (*Id*. at 120-24, 137-40). An administrative hearing was held on April 17, 2024. (*Id*. at 36-70). At the hearing Plaintiff moved to amend his alleged onset date to December 4, 2021, and the ALJ granted the request. (*Id*. at 19, 42-43). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (*Id*. at 19-30). The Appeals Council subsequently denied Plaintiff's request for review. (*Id*. at 6-11). Thus, the ALJ's decision became the final decision of

the Commissioner. *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. §
404.981.

## III.    The Administrative Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful
activity during the period from his alleged onset date, December 4, 2021, through his date
last insured of December 31, 2023. (AR, at 21).  At Step Two, the ALJ determined Plaintiff
suffers from the severe impairments of hypertension, hyperlipidemia, emphysema, obesity,
bipolar disorder, depression, anxiety, and attention deficit disorder ("ADD").  (*Id*. at 22).
At Step Three, the ALJ found Plaintiff's impairments do not meet or medically equal any
of the listed impairments.  (*Id.*)  The ALJ then determined that Plaintiff had the RFC to:

> perform medium work as defined in 20 CFR 404.1567(c) except he can
> occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds,
> and have no concentrated exposure to pulmonary irritants such as gases or
> fumes; he can perform simple, routine, and repetitive work in a routine work
> setting, adapt to routine changes in a routine work setting, and can have
> occasional interaction with public, co-workers and supervisors.

(*Id.* at 24).  Then, at Step Four, the ALJ found Plaintiff could not perform any past relevant
work.  (*Id.* at 28).  At Step Five, however, the ALJ found Plaintiff could perform jobs
existing in significant numbers in the national economy, such as floor waxer, assembler,
and machine packager.  (*Id.* at 29-30).  Thus, the ALJ found that Plaintiff had not been
under a disability at any time from December 4, 2021, the alleged onset date, through
December 31, 2023, the date last insured.  (*Id.* at 30).

IV.    **Claims Presented for Judicial Review**

Plaintiff contends the ALJ erred by improperly evaluating the medical opinions and prior administrative medical findings, failing to support the RFC with substantial evidence, and improperly considering Plaintiff's subjective statements.  (Doc. 6, at 3-15).  The Commissioner contends substantial evidence supports the ALJ's finding that Plaintiff's symptoms were inconsistent with the other evidence – including Plaintiff's activities of daily living – and that the ALJ properly evaluated the medical opinions and prior administrative medical findings.  (Doc. 12, at 4-15).

V.    **The ALJ's Errors in Considering the Opinion Evidence Require Reversal.**

Plaintiff contends the ALJ erred in her consideration of the medical opinion from Dr. Shawn Khavari, M.D., and the prior administrative medical findings made by Dr. Stephanie Crall, Ph.D., and Dr. Lisa Swisher, Ph.D.  (Doc. 6, at 3-8).  The Court agrees, as the ALJ's discussion of their reports was circular and conclusory.  Therefore, reversal is required.

A.    **The Regulatory Requirements for Considering Medical Opinions and Prior Administrative Medical Findings**

An ALJ is required to evaluate every medical opinion and prior administrative medical finding of record.  *See* 20 C.F.R. § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record.").  "A medical opinion is a statement from a medical source about what [a claimant] can still do despite [his or her] impairment(s)" and whether a claimant has a limitation or restriction in the ability to

perform physical, mental, or other demands of work or to adapt to environmental conditions. *Id.* § 404.1513(a)(2). "A prior administrative medical finding is a finding, other than the ultimate determination about whether [a claimant] is disabled, about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review . . . in [the] current claim based on their review of the evidence in [the] case record." *Id.* § 404.1513(a)(5) (including the existence and severity of impairments and symptoms, statements about whether an impairment meets or medically equals a listing, the RFC, and how failure to follow prescribed treatment relates to the claim).

An ALJ considers medical opinions and prior administrative medical findings using five factors: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." *Id.* § 404.1520c(c). Supportability and consistency are the most important factors. *Id.* § 404.1520c(a). "Supportability" examines how closely connected a medical opinion or prior administrative medical finding is to the medical source's objective medical evidence and supporting explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s) is, the more persuasive the medical opinion(s) or prior administrative medical findings will be." *Id.* § 404.1520c(c)(1). "Consistency," on the other hand, compares a medical opinion or prior administrative medical finding to the other evidence: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ must articulate how persuasive he or she finds a medical opinion or prior administrative medical finding. *Id.* § 404.1520c(b). In doing so, the ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings." *Id.* § 404.1520c(b)(2).[4] The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

### B.    The ALJ's Consideration of the Medical Opinion and Findings

Dr. Shawn Khavari, M.D. completed a medical source statement on December 2, 2022. (AR, at 534-36). He opined that Plaintiff had marked limitations in his ability to understand and remember instructions, carry out simple instructions, and make judgments on simple work-related decisions. (*Id.* at 534). He also found Plaintiff had extreme limitations in his ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (*Id.*) In support of these limitations, Dr. Khavari wrote: "[Plaintiff] is experiencing depressive symptoms and anxiety symptoms that have impaired his functionality. Has significant impairment in regards to performing activities of daily living due to the severe depressive symptoms." (*Id.*)

---

[4] An ALJ must consider, but need not explicitly discuss, the remaining factors (relationship with the claimant, specialization, and other factors) unless there are differing medical opinions on an issue and those opinions are equally well-supported and consistent with the record. *See* 20 C.F.R. § 404.1520c(b)(2), (3).

Dr. Khavari also found Plaintiff had marked limitations in his abilities to respond appropriately to usual work situations and changes to routine as well as in his ability to interact appropriately with the public, supervisors, and co-workers. (*Id.* at 535). With regard to these limitations, Dr. Khavari stated: "[Plaintiff] has significant impairment in regards to interacting with others due to severe depressive symptoms and anxiety symptoms." (*Id.*) Additionally, Dr. Khavari wrote that "[Plaintiff] is [sic] significant impairment in regards to performing activities of daily living due to severe depressive symptoms[.] Showers about once/week. Isolates from others." (*Id.*) Dr. Khavari advised that "further details are described in [Plaintiff's] progress notes." (*Id.*)

Addressing the opinion, the ALJ wrote that she "does not find this opinion supported by Dr. Khavari's longitudinal treatment notes. To the extent that this opinion limits [Plaintiff] to simple tasks it is consistent but marked and extreme limitations are not consistent with the other evidence which shows adequate mental functioning for unskilled (simple) work." (*Id.* at 27).

Dr. Stephanie Crall, Ph.D., made the following findings regarding Plaintiff's mental limitations on February 21, 2023:

> [Plaintiff] is able to understand, recall and perform simple and detailed tasks with routine supervision. [Plaintiff] is able to concentrate for two-hour periods with routine breaks and pace and persist for 8-hour workday and 40-hour workweek despite psychological symptoms. [Plaintiff] is able to interact appropriately with coworkers, supervisors, and the general public for incidental work purposes. [Plaintiff] is able to adapt to work setting and changes in work settings."

(*Id.* at 102-03). Dr. Lisa Swisher, Ph.D., also made findings regarding Plaintiff's mental limitations on May 11, 2023, stating:

[Plaintiff] is able to understand, recall and perform simple and detailed tasks, but not complex tasks, and make occasional related judgments. [Plaintiff] is able to attend to and complete more than basic tasks, including tasks that require some skills and judgment, but that does not require doing complex work duties. [Plaintiff] is able to concentrate and focus for two-hour periods with routine breaks, and pace and persist for 8 hour work day and 40 hour work week despite psychological symptoms. Due to periodic interference from psychological symptoms, [Plaintiff] will have difficulty maintaining concentration for complex tasks. [Plaintiff] is able to interact with coworkers and supervisors to learn tasks and accept criticism but can only tolerate incidental/occasional public contact. [Plaintiff] is able to adapt to work setting and some changes in the work setting.

(*Id.* at 113). The ALJ considered these findings together, stating she found:

the State agency psychological consultants' opinions partially persuasive because the evidence reviewed supports and the developed record is consistent with the ability to perform simple tasks. The moderate limitations in mental functioning are supported by the evidence reviewed and consistent with the developed record that does not establish more restrictive limitations. However, the claimant is limited to simple tasks due to his mental impairments and resulting symptoms.

(*Id.* at 28).

## C.    The ALJ's Analysis of the Medical Opinion and Prior Administrative Medical Findings Was Conclusory.

Plaintiff contends the ALJ did not explain how she concluded that the consultants' opinions were supported by the evidence. (Doc. 6, at 5). Plaintiff also argues that "the ALJ's conclusion that Dr. Khavari's limitations are 'unsupported' by his longitudinal treatment notes because the evidence supports mental functioning for unskilled work is simply a conclusion to which the ALJ provides no specific evidence in support." (*Id.* at 8). He asserts that the ALJ did "not explain how she concluded that the longitudinal record does not support Dr. Khavari's finding that [Plaintiff] is markedly limited in carrying out simple instructions." (*Id.*) Thus, he argues that "a reviewing court cannot trace the ALJ's

reasoning as to how she determined the consultants' reasoning and persistence limitations are supported and consistent given the evidence cited while Dr. Khavari's was not."  (*Id.*)

An ALJ must "explain" how he or she considered supportability and consistency, 20 C.F.R. § 404.1520c(b)(2), but the "the regulations do not prescribe the depth at which the ALJ must discuss the factors." *J.T.L. v. Kijakazi*, 2023 WL 5017241, at *5 (D. Colo. Aug. 7, 2023) (citation modified).  "At a minimum, though, an ALJ must eschew rote analysis and conclusory explanations and discuss the crucial factors in any determination with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *A.B. v. Dudek*, 2025 WL 786551, at *5 (D. Colo. Mar. 12, 2025) (citation modified); *see also Cobb v. Kijakazi*, No. CIV-22-551-AMG, 2023 WL 4013336, at *4 (W.D. Okla. June 14, 2023) (finding the ALJ's "discussion of the supportability and consistency factors is excessively sparse and conclusory and thus requires remand").

The ALJ erred in considering Dr. Khavari's opinion because she did not properly consider whether the other evidence – meaning medical and nonmedical evidence from sources other than Dr. Khavari – was consistent with Dr. Khavari's opinion.[5]  The ALJ found the opinion consistent with the evidence to the extent it limited Plaintiff to simple tasks, but that the evidence was inconsistent with marked and extreme limitations.  (AR, at 27).  This finding is conclusory – she does not explain what evidence supports or does not

---

[5] While the supportability discussion is scant, the ALJ summarized the medical records from Plaintiff's four post-onset-date visits with Dr. Khavari, (AR, at 25-26), and the Court can follow the ALJ's reasoning.

support Dr. Khavari's opinions about Plaintiff's abilities. Instead, the ALJ simply finds that Dr. Khavari's opinions are consistent only to the extent they fit within the ALJ's findings.[6] This kind of circular logic is conclusory and also does not sufficiently allow the Court to determine whether the ALJ's finding is supported by substantial evidence. While the Commissioner is correct that the ALJ need not always recite evidence for a second time in analyzing a medical opinion, (Doc. 12, at 13), here the ALJ's consistency conclusion does not reference any evidence or other portion of the opinion to which the Court can refer.

The ALJ made similar errors in considering the state agency consultants' prior administrative medical findings. She found that the evidence was consistent with the consultants' findings to the extent they found Plaintiff could perform simple tasks – the limitation contained in the RFC – but not consistent with more restrictive limitations. (AR, at 28). The ALJ notes that Plaintiff is limited to simple tasks "due to his mental impairments and resulting symptoms," (*id.*), but this explanation does nothing to explain what evidence is consistent or inconsistent with the medical findings. The ALJ's conclusion that the prior administrative medical findings were consistent with moderate limitations, but not more significant limitations, is similarly problematic.

On remand, the ALJ should properly consider and explain the persuasive value of Dr. Khavari's medical opinion and the prior administrative medical findings regarding

---

[6] When formulating the RFC, the ALJ found Plaintiff could perform simple work. (AR, at 24). And the ALJ found Plaintiff only had moderate limitations – not marked or extreme limitations – in interacting with others, managing himself, and understanding, remembering, or applying information. (*Id.* at 23).

Plaintiff's mental impairments – including properly supported discussions of supportability and consistency.  The Court declines to address Plaintiff's remaining arguments "because they may be affected by the ALJ's treatment of th[e] case on remand."  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## VI.    Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the Court **REVERSES** the decision of the Commissioner and **REMANDS** the matter for further proceedings consistent with this Memorandum Opinion and Order.

**IT SO ORDERED** this 27th day of February, 2026.


AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE